Troy R. QUEVILLON and Employers Health Insurance Company, A Wisconsin Corporation, Plaintiffs-Appellants, †

v.

STATE FARM FIRE & CASUALTY COMPANY, a foreign corporation, Defendant-Respondent,

Kevin QUEVILLON, Robert H. Quevillon and Kathleen Quevillon, Defendants.

Court of Appeals

No. 91–2692. *Submitted on briefs February 3, 1993.—Decided May 11, 1993.*

(Also reported in 501 N.W.2d 855.)

†Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Howard A. Davis* of *Habush, Habush & Davis, S.C.*, with *Virginia M. Antoine*, of Milwaukee.

For defendant-respondent State Farm Fire and Casualty Company the cause was submitted on the briefs of *Thomas E. Goss, Jr.*, of *Mueller, Goss & Darnieder, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

SULLIVAN, J.  Troy R. Quevillon and Employers Health Insurance Company appeal from a partial summary judgment dismissing their personal injury action against State Farm Fire and Casualty Company. State Farm had issued three automobile insurance policies to Troy Quevillon's parents, Robert H. and Kathleen M. Quevillon. The issue on appeal is whether the manner in which the policies' territorial limitation provision is drafted allows State Farm to deny liability coverage for the accident.

The facts are undisputed. In April 1989, Troy Quevillon, a passenger in a motor vehicle rented by his father and operated consensually by his brother Kevin, was injured in a collision in Cancun, Mexico. Subsequently, Quevillon and Employer's Health commenced this action seeking compensation for Quevillon's inju-

ries. State Farm moved for summary judgment arguing that the territorial limitation provision included in the policies restricted coverage for liability to accidents occurring within fifty miles of the United States/Mexican border. Cancun is more than fifty miles from the border of the United States. The trial court granted State Farm's motion for summary judgment, and this appeal followed.

Quevillon's first, and dispositive, issue on appeal is that the territorial limitation provision, which is identical in all three policies, is ambiguous and that the ambiguities must be resolved in his favor.[1] The trial court determined that the provision was clear and unambiguous, that there was no policy coverage for Quevillon's injuries, and that State Farm was entitled to summary judgment.

"Construction of an insurance policy presents a question of law that may be appropriately decided on summary judgment." *Wagner v. Milwaukee Mut. Ins. Co.*, 145 Wis. 2d 609, 612, 427 N.W.2d 854, 855 (Ct. App. 1988). This court will affirm the trial court's grant of summary judgment where no material facts were in dispute and the trial court correctly decided questions of law. *See id.*[2] Because the parties do not contend that there was a material issue of fact, we need only determine whether the trial court properly decided the legal question regarding coverage. *See id.*

---

[1] Section 632.32(5)(e), Stats., provides: "A policy may provide for exclusions not prohibited by sub. (6) or other applicable law." Subsection (6) contains no reference to territorial limitations.

[2] The supreme court comprehensively set forth the methodology for summary judgment in *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

In construing an insurance policy we apply an objective test. *St. John's Home v. Continental Casualty Co.*, 147 N.W.2d 764, 781, 434 N.W.2d 112, 119 (Ct. App. 1988). We must interpret the language as would a reasonable person in the position of the insured. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). "Language in an insurance contract is to be given the common and ordinary meaning it would have in the mind of a lay person." *Id.* Whether ambiguity exists is a question of law in which we determine whether the words and phrases are fairly susceptible to more than one meaning. *Id.* Where an ambiguity does not exist, this court will merely apply the policy to the situation and will not engage in construction. *Id.* at 736, 351 N.W.2d at 163.

The territorial limitation provision that Quevillon claims is ambiguous provides:

### Where Coverage Applies

The coverages **you** chose apply:

1.   in the United States of America, its territories and possessions or Canada; or

2.   while the insured vehicle is being shipped between their ports.

The liability, medical payments and physical damage coverages also apply in Mexico within 50 miles of the United States border. A physical damage coverage **loss** in Mexico is determined on the basis of cost at the nearest United States point.

Death, dismemberment and loss of sight, total disability and loss of earnings coverages apply anywhere in the world.

Quevillon argues that the territorial limitation provision is ambiguous because a reasonable person reading the policies could understand the phrase "apply . . . in the United States" to relate to two situations: (1) to an accident occurring in the United States; or (2) to a lawsuit pending in the United States. Quevillon reasons that because the phrase does not read the "coverages apply *to an accident or loss that occurs* in the United States," the provision is ambiguous. This ambiguity, he urges, must be construed against State Farm and in favor of coverage.

Quevillon notes that the ambiguity easily could have been avoided if State Farm had drafted the provision to explain that coverages apply "to accidents and losses" in the United States. He buttresses this argument by reference to a policy provision entitled "When Coverage Applies," which reads: "The coverages you chose apply *to accidents and losses that take place* during the policy period." (Emphasis added.) Because the verbiage *to accidents and losses that take place* clarifies the "when" of policies, Quevillon asserts that had those same words been used in the "where" of territorial restriction provision, the ambiguity would not be present.

We conclude that Quevillon's interpretation is contrary to that of a reasonable person in the position of the insured. While Quevillon urges that an insurance policy should not be construed "through the magnifying eye of a technical lawyer," *see Handal v. American Farmers Mut. Casualty Co.*, 79 Wis. 2d 67, 77, 255 N.W.2d 903, 907 (1977), he has done just that in formulating his own interpretation. While his argument is "inventive," the fact that he is able to " 'conjure up a remotely possible second interpretation is not sufficient to invoke the ambiguity rule.' " *United States Fire*

*Ins. Co. v. Ace Baking Co.*, 164 Wis. 2d 499, 503, 476 N.W.2d 280, 282 (Ct. App. 1991) (citation omitted).

A fair reading of the territorial limitation provision leads to but one logical interpretation—that the coverages apply only when the accident occurs within the specific venues listed in the provision. The ordinary person obtaining automobile insurance understands that the event which triggers insurance coverage is an accident, not a lawsuit. Thus, the insured would logically interpret the territorial limitation to provide coverage only for accidents which occur within certain venues.

Furthermore, an ordinary person would not adopt Quevillon's interpretation of the provision because it would lead to absurd results. For example, assume the insured is injured in an accident and incurs medical expenses. If that accident occurred within the United States, the claim would be paid according to the terms of the contract. If that accident occurred in Mexico, however, and more than fifty miles from the United States border, the only way that the policy would provide coverage is if the insured filed a lawsuit within the United States or Canada, or in Mexico within fifty miles of the border. That is an absurd result. Either the accident and injuries are covered, or they are not. The mere filing of a lawsuit in the proper venue cannot turn an uninsured accident and injury into an insured accident and injury.

Another absurdity arises when we attempt to impose Quevillon's interpretation of the provision to any other part of that provision other than the portion which provides coverage "in the United States." How, for example, would his interpretation be imposed on the language providing: "The coverages **you** chose apply . . . while the insured vehicle is being shipped

166

between [U.S. and/or Canadian] ports." Following Quevillon's logic, a reasonable interpretation of that language would be that all coverages apply to accidents which occur while the vehicle is being shipped, and also to any lawsuit that is filed while the vehicle is being shipped. That interpretation is not reasonable.

After considering the language of the provision, we conclude that no ambiguity exists because the reasonable person in the position of the insured would consider it capable of only one interpretation, and we apply that interpretation to this case. State Farm's policy did not provide liability coverage for accidents occurring in Mexico more than fifty miles from the United States border. The accident in this case occurred more than fifty miles from the border. Thus, no liability coverage existed. The trial court correctly decided this legal issue and we affirm the summary judgment in favor of State Farm.[3]

*By the Court.*—Judgment affirmed.

---

[3] Quevillon raises two other issues that need not be discussed. The first, that the policies, if enforceable, would provide coverage of $150,000 is not disputed by defendants. The second, whether State Farm would be required to pay prejudgment interest in the event of a money judgment, is moot.