UNITED STATES of America, Plaintiff,

v.

Peter THORSON, Managed Investments Incorporated, Construction Management, Inc., and Gerke Excavating, Inc., Defendants.

No. 03–C–0074–C.

United States District Court,
W.D. Wisconsin.

Sept. 26, 2003.

Leslie K. Herje, Madison, WI, for Plaintiff.

William T. Curran, Curran, Hollenbeck & Orton, S.C., Mauston, WI, for Defendants.

## OPINION AND ORDER

CRABB, Chief Judge.

On February 11, 2003, plaintiff United States of America filed this civil action seeking injunctive relief and civil penalties against defendants for the unauthorized discharge of pollutants into navigable waters of the United States pursuant to Sections 309(b) and (d) of the Clean Water Act, 33 U.S.C. §§ 1319(b) and (d). In the complaint, plaintiff alleged that on or about March 27, 2001, defendant Gerke Excavating, Inc. excavated, dredged and filled a wetland, which caused a discharge of pollutants into navigable waters of the United States. Plaintiff alleged that defendant Gerke did so without possessing or obtaining a Section 404 Permit under the Clean Water Act, requesting a copy of any alleged Section 404 Permit issued for the project at the site or making any independent effort to determine whether a permit had been issued in fact.

On August 19, 2003, Acuity, A Mutual Insurance Company, filed a motion to intervene pursuant to Fed.R.Civ.P. 24 in order to seek a declaratory judgment pursuant to 28 U.S.C. § 2201 to establish whether it has an obligation to defend or indemnify defendant Gerke. According to Acuity's proposed complaint, Acuity issued an insurance policy to defendant Gerke that was effective from January 1, 2001 to January 1, 2002. Defendant Gerke has tendered the defense of plaintiff's complaint to Acuity. Acuity contends that it has no obligation under the terms of its policy to defend Gerke against the claims alleged by plaintiff or to indemnify Gerke if liability is found. If it is allowed to intervene, Acuity seeks an order bifurcating the proceedings and staying any decision on liability until the court has resolved the insurance coverage question. Acuity's motions are the subject of this opinion and order.

The only party that has objected to Acuity's intervention is plaintiff. Plaintiff argues that Acuity is not entitled to intervene under either Rule 24(a) or Rule 24(b) because its motion is not timely. Plaintiff argues that insofar as Acuity's intervention will delay the trial in this matter, it prejudices the public interest because more environmental damage occurs every day that the wetland is not restored.

Subject matter jurisdiction is present pursuant to 33 U.S.C. §§ 1319(b) and (d) and 28 U.S.C. § 1331. Acuity's motion to intervene will be granted because I find that it meets all four requirements for intervention as of right under Fed.R.Civ.P. 24(a)(2). In addition, because I find that the most efficient and fair way to protect Acuity's interest and resolve the issues in this lawsuit is to decide the issue of insurance coverage before liability, I am granting Acuity's motion for bifurcation and stay.

For the purpose of deciding Acuity's motions, I find the following facts.

## FACTS

Acuity issued an insurance policy to defendant Gerke that was effective from January 1, 2001 to January 1, 2002. Plaintiff filed its complaint on February 11, 2003. Defendant Gerke tendered defense of this suit to Acuity on March 7, 2003. In April 2003, Acuity appointed both coverage counsel and defense counsel, subject to a complete reservation of rights. On April 17, 2003, corporate counsel for defendant Gerke wrote to Acuity, asking that Acuity's appointed counsel not appear in the proceedings. Defendant Gerke's corporate counsel believed that appearance by Acuity's lawyers might hamper settlement negotiations that were underway at that time.

In June 2003, corporate counsel for Gerke informed Acuity that the parties were no longer discussing settlement. Corporate counsel requested Acuity to submit its position regarding insurance coverage in writing. Acuity determined that the insurance policy it issued to defendant Gerke does not afford coverage for the claims alleged by the government in its complaint. It conveyed its

position to defendant Gerke by letters dated July 9 and July 22, 2003. Acuity filed its motion to intervene on August 19, 2003.

## OPINION

### A. *Rule 24(a)(2)*

■ Rule 24(a)(2) provides that upon timely application, "anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." In order to intervene under Rule 24(a)(2), an applicant must demonstrate that "(1) the application is timely; (2) the applicant has an 'interest' in the property or transaction which is the subject of the action; (3) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest; and (4) no existing party adequately represents the applicant's interest." *Security Ins. Co. of Hartford v. Schipporeit,* 69 F.3d 1377, 1380 (7th Cir.1995) (citing *United States v. City of Chicago,* 798 F.2d 969, 972 (7th Cir. 1986)).

Plaintiff opposes Acuity's motion primarily on the ground that it is untimely. Because that issue is intertwined with Acuity's motion to bifurcate the coverage and liability issues and stay decision on liability until coverage is decided, I will address the timeliness of Acuity's motion last.

#### 1. *Acuity's interest*

■ To be entitled to intervention as of right, Acuity must have a direct and legally protectable interest in the proceedings. *Security Ins. Co. of Hartford,* 69 F.3d at 1380. Because Acuity's policy was issued in the state of Wisconsin, Wisconsin law applies in determining the nature of the company's interest in this suit. *Lexington Ins. Co. v. Rugg & Knopp, Inc.,* 165 F.3d 1087, 1091 (7th Cir.1999). An insurance company has a duty to defend its insured when the relevant policies would provide coverage if the allega-

tions within the four corners of plaintiff's complaint are proven. *School Dist. of Shorewood v. Wausau Ins. Cos.,* 170 Wis.2d 347, 364, 488 N.W.2d 82, 87 (1992); *see also Sola Basic Industries, Inc. v. United States Fidelity & Guaranty Co.,* 90 Wis.2d 641, 644–46, 280 N.W.2d 211, 213 (1979). The duty to defend is broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage. *See Newhouse v. Citizens Sec. Mut. Ins. Co.,* 176 Wis.2d 824, 834–35, 501 N.W.2d 1, 5 (1993). The Supreme Court of Wisconsin has held that where an insurer is not named in the underlying lawsuit, insurance coverage may be determined either by a separate declaratory judgment action or by the insurer's intervention in the underlying action followed by a bifurcated trial. *See Fire Ins. Exchange v. Basten,* 202 Wis.2d 74, 89, 549 N.W.2d 690, 696 (1996).

■ Acuity's interest in the underlying lawsuit is significant because of the severe consequences if it breaches its duty to defend. *See, e.g., Newhouse,* 176 Wis.2d at 835, 501 N.W.2d at 5 (holding that insurer was liable for amount in excess of policy limits because it breached its duty to defend); *Patrick v. Head of Lakes Cooperative Electric Association,* 98 Wis.2d 66, 72, 295 N.W.2d 205 (1980) (holding that insurer must pay for defense after it declined to provide a defense and coverage was found to exist); *Carney v. Village of Darien,* 60 F.3d 1273, 1277 (7th Cir.1995) (applying Wisconsin law) ("An insurer that breaches its duty to defend waives its right to later challenge coverage"); *Hamlin Inc. v. Hartford Accident & Indemnity Co.,* 86 F.3d 93, 95 (7th Cir.1996) (applying Wisconsin law) ("Insurance companies that refuse in bad faith to honor their undertakings are liable for punitive damages."). If Acuity refuses to defend and coverage is found to exist, the company will be forced to cover any damages awarded to plaintiff because it will not be allowed to present any non-coverage defenses. Alternatively, if Acuity defends under a reservation of rights, it will be forced to pay attorney fees for which it may not be liable under the terms of its policy. If Acuity defends without a reser-

vation of rights, it will waive policy defenses and cannot contest coverage.

In sum, Acuity has a " 'direct, significant, legally protectable' " interest in the underlying suit. *Security Ins. Co. of Hartford,* 69 F.3d at 1380 (quoting *American Nat'l Bank v. City of Chicago,* 865 F.2d 144, 146 (7th Cir.1989)).

### 2. *Impairment of Acuity's ability to protect its interest*

█ In order to prove the third element of the test for intervention as of right under Rule 24(a)(2), Acuity must show that as a practical matter, its ability to protect its interest may be affected or impaired by the disposition of the action. Plaintiff contends that Acuity can protect its interest by filing a separate action for declaratory judgment. It argues that this court should not allow "collateral" commercial matters to become entwined with an environmental enforcement proceeding brought by the government to protect the public interest. However, the goal of the interest requirement of Rule 24(a)(2) is "to dispose of lawsuits by involving as many concerned parties as is compatible with efficiency and due process." 6 *Moore's Federal Practice* § 24.03(2)(a) (Matthew Bender 3d ed.). Plaintiff has not cited any authority to support its suggestion that this goal does not apply to cases in which the underlying lawsuit is an environmental enforcement proceeding.

Furthermore, the only way for Acuity to avoid the expenditure of legal fees in the underlying action is to obtain a determination of coverage *before* the underlying issue of liability is decided. It is doubtful that Acuity would obtain a declaratory judgment, in either state or federal court, on its duty to defend and indemnify before it begins to incur costs for defending Gerke in this action. Acuity has accepted Gerke's tender of defense subject to a complete reservation of rights. This means that it has an obligation to defend Gerke until a determination is made whether Acuity may be responsible under the terms of its policy if defendant Gerke is found to be liable. *See Davila v. Arlasky,* 141 F.R.D. 68, 71 (N.D.Ill.1991) (discussing insurance company's dilemma

and holding that insurers' interest was sufficient but denying intervention on other grounds). Disposition of the underlying action would impair Acuity's ability to protect its interest if plaintiff's claims are determined to fall outside the policy coverage.

### 3. *Representation of Acuity's interest*

█ The next prong of the test for Rule 24(a)(2) intervention is that no existing party will adequately represent Acuity's interest. The showing of inadequate representation "is satisfied if the [intervenor] shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Lake Investors Development Group, Inc. v. Egidi Development Group,* 715 F.2d 1256 (7th Cir.1983) (quoting *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972)). Acuity wants to intervene in order to determine that it has no duty to defend before trial so it will not be forced to incur the costs of defending the underlying suit or risk being penalized for wrongfully denying its obligations. There is no existing party that will adequately represent Acuity's interest in obtaining such a judgment.

### 4. *Timeliness*

█ Finally, in order for Acuity to be allowed to intervene as of right, its motion must be timely. "The test for timeliness is one of reasonableness: 'potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning of a suit that might affect their rights, they need to act reasonably promptly.' " *Reich v. ABC/York–Estes Corp.,* 64 F.3d 316, 321 (7th Cir.1995) (quoting *Nissei Sangyo America, Ltd. v. United States,* 31 F.3d 435, 438 (7th Cir.1994)). The court considers the following factors to determine whether a motion is timely: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances. *Ragsdale v. Turnock,* 941

F.2d 501, 504 (7th Cir.1991) (citing *South v. Rowe,* 759 F.2d 610, 612 (7th Cir.1985)).

Acuity sought to intervene a little over six months after plaintiff filed its complaint and approximately five and a half months after defendant Gerke tendered defense of the suit. Plaintiff argues that this delay was unreasonable, given that the reasons asserted by Acuity for not seeking to intervene sooner were strategic. I agree that Acuity could and should have sought to intervene sooner. Although I cannot say that it was unreasonable for Acuity to have waited in the wings while the parties were discussing settlement, it should have moved more quickly once it learned that settlement discussions had broken down. Acuity could have investigated and articulated its position regarding coverage at the same time the parties were discussing settlement, so that it was ready to seek to intervene in June 2003 when it learned that settlement had failed and its interests were no longer being protected.

However, the passage of time is not the only factor or the most important factor in deciding whether a motion to intervene is timely. Rather, "the most important consideration ... is whether the delay in moving for intervention ... will prejudice the existing parties to the case." *People Who Care v. O'Brien,* 68 F.3d 172, 176 (7th Cir.1995) (quoting *Nissei Sangyo,* 31 F.3d at 439). Neither defendant Gerke nor any of the other defendants has asserted that it will be prejudiced by the delay if Acuity is allowed to intervene. The only prejudice that plaintiff has alleged is that which could result if this court allows Acuity to intervene *and* grants its request for a stay.

Acuity asserts that its motion to intervene does not depend on the court's granting its motion to stay, noting that it could have a dispositive motion regarding its claim that its policy affords no coverage to defendant Gerke filed by October 16, 2003, which is the date set forth in the scheduling order for the filing of all dispositive motions. However, as Acuity surely recognizes, keeping the existing scheduling order in place if Acuity is allowed to intervene is neither practical nor workable. Would Acuity file its own motion for summary judgment on the ground

that it is not required to defend Gerke, while at the same time defending Gerke against any dispositive motion that the plaintiff might file? Proceeding simultaneously with coverage and liability would seem to do little to protect Acuity's interest in this case, not to mention that of defendant Gerke. It is not far-fetched to imagine that Gerke could find itself in the position of having to defend against two dispositive motions at once, one brought by Acuity and one brought by plaintiff. Acuity's offer to adhere to the existing scheduling order does little to promote Rule 24(a)(2)'s goal of resolving lawsuits efficiently and fairly.

The only way it makes sense to allow Acuity to intervene is if the court also grants the motion for bifurcation and stay. Plaintiff argues that its interests will be prejudiced by any stay that results in a delay of the trial because it will delay the restoration of the wetland that plaintiff alleges was dredged and filled by defendants. Plaintiff argues that the public's interest in preventing further damage to the wetland and its attendant habitat outweigh Acuity's interest in resolving its contract dispute with defendant Gerke.

I understand plaintiff's interest in resolving this lawsuit as soon as possible and I am troubled by Acuity's failure to file its motion sooner, but I am not persuaded that plaintiff's interest outweighs Acuity's interest in resolving the insurance coverage question before it incurs expenses defending Gerke against this lawsuit. Acuity has a direct and legally protectable interest in avoiding the expenditure of legal fees in the underlying action. The most expeditious and fair way to protect that interest is to allow Acuity to intervene and then to stay proceedings on liability so that Acuity may obtain a determination of its duty to defend Gerke. Wisconsin case law strongly favors allowing an insurer to have coverage determined before incurring the costs of defending its insured or breaching its duty to defend. *Newhouse,* 176 Wis.2d at 832, 501 N.W.2d at 5 ("[T]he proper procedure for an insurance company to follow when coverage is disputed is to request a bifurcated trial on the issues of coverage and liability and move to stay any

proceedings on liability until the issue is resolved. When this procedure is followed, the insurance company runs no risk of breaching its duty to defend.") (citing *Elliott v. Donahue*, 169 Wis.2d 310, 318, 485 N.W.2d 403, 406 (1992)). Allowing Acuity to intervene in the underlying lawsuit allows resolution of the coverage issue before the liability issue, expedites this litigation by disposing of the entire controversy, avoids concurrent lawsuits and protects Acuity's interest in avoiding the expenditure of legal fees in the underlying action if it does not have a duty to defend.

Although resolving the insurance coverage issue before liability is likely to result in a later trial date, the court does not anticipate that the trial will have to be delayed by more than a month or two. Beyond its "the sooner, the better" argument, plaintiff has not presented any evidence to show that a month or two month delay in the trial will cause irreparable harm to the wetland at issue. Accordingly, considering all the competing concerns in this case, I conclude that staying proceedings on liability will not cause undue prejudice to any of the existing parties, and that therefore Acuity's motion to intervene is timely.

Because I find that Acuity has met the four requirements for intervention as of right under Rule 24(a)(2), its motion to intervene will be granted. As a result, it is unnecessary to address the issue of permissive intervention under Rule 24(b)(2).

The parties shall promptly confer with the magistrate judge to establish a new schedule.

## ORDER

IT IS ORDERED that the motion of Acuity, A Mutual Insurance Company, to intervene pursuant to Fed.R.Civ.P. 24(a)(2) is GRANTED. The current schedule on liability is stricken in favor of new dates to be set at a status conference with the magistrate judge, to be scheduled by the clerk of court.