TOWNE REALTY, INC., Joseph Zilber, Donald Grande and
Gerald Stein, Plaintiffs-Respondents,

v.

ZURICH INSURANCE COMPANY, Defendant-Appellant-
Petitioner.†

Supreme Court

*No. 94–1743. Oral argument April 2, 1996.—Decided May 22,
1996.*

(Also reported in 548 N.W.2d 64.)

†Motion for reconsideration filed June 10, 1996.

261

For the defendant-appellant-petitioner there were briefs by *Robert Marc Chemers, Scott L. Howie* and *Pretzel & Stouffer, Chartered*, Chicago, IL and *Paul J. Pytlik* and *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.*, Milwaukee and oral argument by *Scott L. Howie.*

For the plaintiffs-respondents there was a brief by *James E. Culhane, Michael R. Wherry* and *Davis & Kuelthau, S.C.*, Milwaukee and oral argument by *Michael R. Wheery.*

Amicus curiae was filed by *Susan R. Tyndall* and *Hinshaw & Culbertson*, Milwaukee for the Civil Trial Counsel of Wisconsin and Wisconsin Insurance Alliance.

DONALD W. STEINMETZ, J.   This case presents the following three issues concerning the breach of an insurer's duty to defend and the resulting damages

from such a breach: (1) what constitutes a "tender of defense" under an insurance contract; (2) whether legal defense expenses incurred *before* the tender are allowable as damages; and (3) when, if ever, is an insurer responsible for the legal expenses involved in pursuing a countersuit. We hold that a tender of defense occurs when the insurer has notice that there is a claim against the insured. Further, we hold that even if an insurer does breach its duty to defend, the insurer cannot be held liable for either those expenses incurred by the insured before the insurer has been put on notice or those incurred by the insured in prosecuting a countersuit, unless, of course, the contract so provides.

Towne Realty, Inc., Joseph Zilber, Donald Grande and Gerald Stein (collectively the "Insureds") filed this action claiming that Zurich Insurance Company ("Zurich") breached its duty to defend the Insureds against a suit brought by Joseph and Leslie West Balestrieri. The Balestrieris sued the Insureds on October 11, 1991, for damages resulting from various alleged wrongdoings including breach of contract, tortious interference with contract, negligent and intentional misrepresentation and breaches of fiduciary duty. On October 21, 1991, an agent of Towne Realty sent a letter to Zurich advising Zurich of the suit. The pertinent portions of this letter read:

> At this time, the enclosed information is not being submitted as a claim. I am sending it to your attention for review and discussion.
>
> As it is an unusual and complicated situation, we would first like to see Zurich's insight into potential position on extent of coverage.
> . . .
> At present, we have retained the services of Attorney Michael Wherry with the firm Davis and

> Kuelthau in Milwaukee, WI and would like to continue his services as he is well acquainted with the intricacies of this matter.

A copy of the summons and complaint was also attached to this letter filed by the Balestrieris. Zurich's only response to this letter was an acknowledgement of its receipt and creation of a claim file on October 24, 1991. Zurich did not respond to Towne Realty's query regarding coverage until May 18, 1992, when it sent a letter denying coverage and refusing to defend against the action.

Although some correspondence continued between the Insureds and Zurich, this denial of coverage ultimately led to the Insureds seeking summary judgment in a declaratory judgment action filed against Zurich on May 6, 1993, in Milwaukee County. The trial court, Honorable Patricia S. Curley, determined that the policy covered the types of actions alleged by the Balestrieris and granted summary judgment in the Insureds' favor. During subsequent hearings, Judge Curley also held that the October 21, 1991, letter constituted a proper tender of defense and that the expenses incurred by the Insureds before October 21, 1991, and those expenses associated with the Insureds' pursuit of various counterclaims against the Balestrieris were recoverable as damages flowing from Zurich's breach of its duty to defend. The court of appeals affirmed the circuit court on all three issues, with Presiding Judge Thomas Cane dissenting on the issues of recovery of pre-tender and countersuit expenses. *See Towne Realty, Inc. v. Zurich Ins. Co.*, 193 Wis. 2d 544, 534 N.W.2d 886 (Ct. App. 1995).

In order to fully understand the questions presented by this case, it is necessary to further discuss the underlying Balestrieri action. The Insureds

incurred significant legal expenses in the 11 days after the Balestrieri suit was initiated, but before they first contacted Zurich. The Insureds claim that because of the high level of publicity garnered by the suit, these expenses, which included strategizing on media control and preparing for injunctive relief to protect crucial documents in control of the Balestrieris, were a necessity. They were allegedly facing an "emergency" situation which required immediate legal attention.

After receiving no response from Zurich other than the October 24, 1991, acknowledgement of receipt, the Insureds continued to defend against the Balestrieri action. In November or December of 1991, the Insureds individually filed responsive pleadings, which included a number of counterclaims, to the Balestrieri suit. Then, after various hearings and motions, the Balestrieri suit was dismissed without prejudice on January 21, 1992. The Insureds, however, continued to pursue their counterclaims until June 4, 1993. The damages sought by the Insureds, therefore, can be broken into three "sets": (1) those expenses incurred prior to notifying Zurich of the suit; (2) those expenses incurred "defending" the Balestrieri suit; and finally (3) those expenses incurred in pursuing counterclaims against the Balestrieris.

Of the three issues presented by this case, the first and foremost is whether the Insureds ever effectuated a tender of defense. Obviously, if a tender of defense had not been made, or, as argued by Zurich in the alternative, the Insureds in Towne Realty's October 21, 1991, letter specifically requested Zurich not to take part in the defense of the Balestrieri suit, then Zurich would not be liable for *any* damages. It is only if the October 21, 1991, letter constituted a tender of defense that the remaining two issues must be addressed.

As the court of appeals recognized, the sufficiency of a tender of defense is a question of first impression in the State of Wisconsin. *See Towne Realty*, 193 Wis. 2d at 557. Since it entails the application of a set of undisputed facts to a legal standard, it is a question of law which we answer without deference to the trial court or the court of appeals. *See Nottelson v. ILHR Department*, 94 Wis. 2d 106, 116, 287 N.W.2d 763 (1980).

The court of appeals identified a split in those authorities which have considered the sufficiency of a tender of defense under an insurance contract. *See Towne Realty* 193 Wis. 2d at 558. Several courts have held that an insurer only needs to be put on notice for the duty to defend to be invoked. *See White Mountain Constr. v. Transamerica Ins.*, 631 A.2d 907, 910 (N.H. 1993); *Widener Univ. v. F.S. James & Co.*, 537 A.2d 829, 833 (Pa. Super. Ct. 1988); *Cobb v. Empire Fire & Marine Ins. Co.*, 488 So. 2d 349, 350 (La. Ct. App. 1986). Other courts require the insurer to specifically request the insurance company to defend the suit. *See, e.g., Hartford Acc. & Indem. Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1383 (7th Cir. 1985); *Casualty Indem. Exchange Ins. Co. v. Liberty Nat'l Fire Ins. Co.*, 902 F. Supp. 1235, 1239 (D. Mont. 1995); *Litton Systems, Inc. v. Shaw's Sales & Serv., Ltd.*, 579 P.2d 48, 52 (Ariz. Ct. App. 1978). The court of appeals found the first position more persuasive. *See Towne Realty*, 193 Wis. 2d at 558.

We agree with both the conclusion and the analysis of the court of appeals. A tender of defense occurs once an insurer has been put on notice of a claim against the insured. This approach "discourages the insurer . . . from defaulting in the performance of its duty to defend." *White Mountain*, 631 A.2d at 910. Fur-

thermore, placing the duty upon the insurer is not as onerous as placing the duty upon the insured: insurers are usually more sophisticated and knowledgeable than insureds regarding the insurer's duty to defend and insurers are in a better position than insureds to facilitate clear communication between the parties.

■

There is no doubt that Zurich had notice that a suit had been initiated against the Insureds. The Insureds attached a copy of the summons and complaint to their October 21, 1991, letter. Zurich, therefore, was not only aware of the suit as of this date, but was also aware of the specific claims alleged against the Insureds. As was its right, Zurich denied coverage based upon a reasonable belief that the claims contained in the complaint were not covered by the insurance policy. However, since the circuit court subsequently determined that the claims were covered by the policy and that Zurich had improperly denied coverage, Zurich is liable for all damages flowing from its breach of its duty to defend as of October 21, 1991, the date it was put on notice of the suit.

Zurich, however, argues, in the alternative, that even if the October 21, 1991, letter qualifies as an adequate tender of defense, the language of the letter waives Zurich's duty to defend by explicitly stating that the suit was not being submitted as a claim. Although Zurich argues this position vehemently, it is not persuasive under the facts of this case. The language of the October 21, 1991, letter is not nearly as clear or as explicit as Zurich claims. Instead, the letter is at best ambiguous and can easily be read, as the court of appeals noted, to support the Insureds' position that the letter was "a request that Zurich assume defense of the action." *Towne Realty*, 193 Wis. 2d at 559.

This court has repeatedly held that "[i]f there is any doubt about the duty to defend, it must be resolved in favor of the insured." *Shorewood School Dist. v. Wausau Ins.*, 170 Wis. 2d 347, 364, 488 N.W.2d 82 (1992); *see also, e.g., Elliott*, 169 Wis. 2d at 321. Although these holdings specifically apply to the question of whether coverage exists under a contract, underlying these decisions is the general realization that the insurer is in a superior position to the insured in relation to the formation and interpretation of the insurance contract. Therefore, we hold that if it is unclear or ambiguous whether the insured wishes the insurer to defend the suit, it becomes the responsibility of the insurer to communicate with the insured before the insurer unilaterally forgoes the defense.[1] This places the "burden of ensuring clear communication between the insurer and insured on the insurer, who is better positioned, in terms of expertise and resources, to manage such a task." *White Mountain Const.*, 631 A.2d at 910. Despite Zurich's protestations, this holding should not create an onerous duty for insurers: a simple letter requesting clarification of the insured's position should suffice.[2]

---

[1] There would not, of course, be a duty on the part of the insurer to contact the insured if correspondence from the insured *explicitly* stated that it was waiving its contractual right to a defense. The October 21, 1991, letter, however, hardly constitutes a waiver.

[2] The insurer fulfills its duty once it requests the insured for clarification of its position. If the insured is uncooperative or unresponsive, the insurer need not pursue the matter further. This will prevent a sophisticated insured from intentionally vacillating on whether it wants the insurance company to

In this case, however, Zurich did not even attempt to determine if the Insureds' wished Zurich to take over the defense or if they simply sought Zurich's position on coverage. Instead, Zurich ignored the Insureds' multiple attempts to communicate with it and waited months before it even responded with a position on coverage. In fact, it wasn't until February 11, 1994, that Zurich gave any indication that it did not consider the October 21, 1991, letter an adequate tender. When faced with an ambiguous communication from an insured, such as the October 21, 1991, letter, an insurer cannot engage in this type of behavior and simply "assume" that the insured does not wish a defense. Instead, it has an affirmative duty to specifically determine that a defense is not desired. Zurich did nothing to meet this duty.

Zurich, therefore, is liable for any expenses incurred by the Insureds in defending against the Balestrieri suit from the date Zurich had notice of the claim, October 21, 1991, until the date the Balestrieri suit was dismissed, January 21, 1992. Two questions, however, remain: (1) is Zurich liable for the Insureds' expenses incurred between October 11, 1991, and October 21, 1991, the so-called "pre-tender" expenses, and (2) is Zurich liable for the expenses associated with the Insureds' pursuit of various counterclaims against the Balestrieris. Since the proper measure of damages for an insurer's breach of its duty to defend is a question of law, we review both questions de novo without deference to the trial court or the court of appeals. *See*

defend the action and, then, after significant legal expenses have accumulated, demanding indemnification.

*Newhouse v. Citizens Security Mut. Ins.*, 176 Wis. 2d 824, 837, 501 N.W.2d 1 (1993).

The court of appeals held that Zurich is liable for all pre-tender expenses. *See Towne Realty*, 193 Wis. 2d at 561. We disagree. Zurich can only be liable for damages which "naturally flow" from its breach of a contractual *duty. Newhouse*, 176 Wis. 2d at 837. Zurich had no duty to defend until it had been put on notice that there was a claim against the Insureds. As the Minnesota Supreme Court recognized in a similar situation, a tender of defense is a condition precedent to the creation of a duty to defend. *See SCSC Corp. v. Allied Mut. Ins. Co.*, 533 N.W.2d 603, 614 (Minn. 1995). Since Zurich's duty to defend did not attach until October 21, 1991, any expenses which the Insureds incurred before this time, unless specifically allowed by the contract,[3] cannot flow from Zurich's breach of this duty. To hold otherwise would require Zurich to have breached a contractual duty on October 10, 1991, that did not even exist until October 21, 1991.

This court reached a similar conclusion in *Pitrowski v. Taylor*, 55 Wis. 2d 615, 201 N.W.2d 52 (1972). In *Pitrowski* we held that an insurer was not liable for certain attorney fees since prior to incurring such fees the insured neither made a tender of defense nor requested authorization from the insurer for such expenses. *See id.* at 626. Zurich, like the insurer in *Pitrowski*, did not have a duty to defend at the time the expenses in question were incurred because no tender

---

[3] In this case, the contract specifically does not allow pre-tender expenses to be incurred unless necessary for first aid. Despite asserting the "emergency" nature of the Balestrieri action, the Insureds do not claim that the situation was so egregious that "first-aid" was required.

of defense had been made. The fact that Zurich *did* eventually breach its duty and the insurer in *Pitrowski did not* is a distinction without a difference in relation to the issue of pre-tender expenses.

The final question before this court is whether Zurich is liable for the expenses incurred by the Insureds in prosecuting the counterclaims against the Balestrieris. In *Newhouse* we held that damages which naturally flow from a breach of a duty to defend include: "(1) the amount of the judgment or settlement against the insured plus interest; (2) costs and attorney fees incurred by the insured in *defending the suit*; and (3) any additional costs that the insured can show naturally resulted from the breach." *Newhouse*, 176 Wis. 2d at 838 (emphasis added). Only legal expenses incurred while "defending the suit" against the insured are recoverable.

Although *Newhouse* does not specifically define what constitutes "defending the suit," it is clear that countersuits are not included under the language of the insurance contract in this case. According to the contract, Zurich only has a duty to defend "any suit seeking . . . damages" against the Insureds. This court interpreted insurance contract language almost identical to this to mean exactly what it says: "the only duty imposed on the insurer[ ] is to defend against suits seeking damages from the insureds." *City of Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 765, 517 N.W.2d 463 (1994), *cert. denied*, 115 S.Ct. 1360 (1995). This language clearly precludes recovery of expenses for offensive actions taken by the insured. At risk of stating the obvious, a countersuit initiated *by* the insured

cannot logically be a suit seeking damages *from* the insured.

The Insureds assert, though, that an exception should be made in situations such as this where the prosecution of a counterclaim is necessary to fully defend the original suit. They argue that it was the vigorous advancement of the countersuit which was ultimately responsible for the quick dismissal of the Balestrieri action. However, as Judge Cane perceptively observed in his dissent, although "[i]t may be true that a good defense is a good offense, . . . that does not create an obligation beyond the terms of the insurance policy . . . ." *Towne Realty*, 193 Wis. 2d at 569-70. The insurance contract simply does not establish an obligation on the part of Zurich to indemnify the Insureds for the pursuit of counterclaims. If Zurich had been performing the defense of the suit, the Insureds certainly could not have *required* Zurich to pursue a counterclaim. The same reasoning is applicable when determining Zurich's liability due to its breach of contract. It is a basic tenent of contract law that a party is not entitled to greater damages than what he or she would have received under the contract if the defaulting party would have fully performed.[4]

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.

SHIRLEY S. ABRAHAMSON, J., did not participate.

---

[4] Of course, contract damages can also include consequential and incidental damages. The expenses at issue, however, clearly do not fall into either of these categories.