# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CNH INDUSTRIAL AMERICA LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. N12C-07-108 EMD CCLD |
| AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, *et al.*, | ) ) ) ) | TRIAL BY JURY OF TWELVE DEMANDED |
| Defendants. | ) ) | |

Argued: March 15, 2016
Decided: August 19, 2016

*Upon Plaintiff CNH Industrial America LLC's Supplemental Motion for Partial Summary Judgment Against Travelers Regarding the Duty to Defend*
***GRANTED***

Brian M. Rostocki, Esquire, and John C. Cordrey, Esquire, Reed Smith LLP, Wilmington, Delaware and James M. Davis, Esquire, Thomas A. Marrinson, Esquire, Evan T. Knott, Esquire, and Emily E. Garrison, Esquire, Reed Smith LLP, Chicago, Illinois. *Attorneys for CNH Industrial America LLC*.

Neal J. Levitsky, Esquire, and Seth A. Niederman, Esquire, Fox Rothschild LLP, Wilmington, Delaware and Richard L. McConnell, Esquire, and Dale E. Hausman, Esquire, Wiley Rein LLP, Washington, DC. *Attorneys for Travelers Indemnity Company*.

**DAVIS, J.**

## INTRODUCTION AND PROCEDURAL HISTORY

This is a Complex Commercial Litigation Division case. Plaintiff CNH Industrial America LLC ("CNH") filed a declaratory relief and breach of contract case against several insurance companies, including Travelers Indemnity Company ("Travelers"). CNH's complaint alleges Travelers breached its duty to defend and indemnify CNH in underlying asbestos-related

lawsuits.  The parties in this action have engaged in aggressive litigation, including a motion practice that can only be characterized as extreme.[1]

The parties filed numerous summary judgment motions related to Travelers' duties under the Insurance Policies,[2] including the Case Insurance Policy.  On October 7, 2014, CNH filed Plaintiff CNH Industrial America LLC's Motion for Partial Summary Judgment Against Travelers Regarding the Duty to Defend (the "Motion").  CNH requested the Court hold that Travelers has a duty to defend and indemnify CNH in numerous underlying asbestos bodily injury lawsuits.

On May 18, 2015, the Court held oral argument.  The Court made several bench rulings, and reserved decision on the remaining issues.  On June 8, 2015, the Court issued two orders memorializing its bench rulings.  First, the Court held that Wisconsin law applied to the policies.[3]  Second, the Court held that CNH was the policies' proper assignee under 1994 reorganization agreements.[4]

On July 6, 2015, prior to the Court's written decisions on the remaining issues (including a decision on the Motion), Travelers filed a letter with the Court.[5]  In it, Travelers outlined its pending $1.6 million payment to CNH for indemnity and defense costs.[6]  Travelers paid $600,000 to indemnity CNH for prior settlements.[7]  Travelers calculated its indemnity payments

---

[1] The Court is aware and has reviewed the pending Defendant The Travelers Indemnity Company's Motion to Vacate or Revise Prior Orders, CNH's response and Travelers' reply, and the Opinion and Order of Special Master decided July 20, 2016 ("Special Master's Opinion").

[2] Capitalized terms not defined herein shall have the meaning ascribed to the term in *CNH Indus. America LLC v. American Cas. Co. of Reading, Pennsylvania*, C.A. No. N12C-07-108-EMD CCLD, 2015 WL 5016849 (Del. Super. Aug. 21, 2015)(OPINION).

[3] *CNH Indus. America LLC v. American Cas. Co. of Reading, Pennsylvania*, C.A. No. N12C-07-108-EMD CCLD, 2015 WL 3863225, at *2 (Del. Super. Jun. 8, 2015) (ORDER).

[4] *CNH Indus. America LLC v. American Cas. Co. of Reading, Pennsylvania*, C.A. No. N12C-07-108-EMD CCLD, 2015 WL 4538120, at *2 (Del. Super. Jun. 8, 2015) (ORDER).

[5] Letter, dated July 6, 2015, from Neal J. Levitsky, Esq., to the Honorable Eric M. Davis (regarding developments related to the Court's recent rulings on choice of law and assignment and pending summary judgment motion).

[6] *Id.* at *3–4.

[7] *Id.*

by taking six underlying cases CNH tendered in 2008–09, and spreading the remaining policy limits amongst them.[8]  Further, Travelers paid $1.0 million for all substantiated, post-tender defense costs CNH allegedly incurred through May 18, 2009, the latest date Travelers used in calculating its indemnity payment.[9]  Travelers contends that the payment fully exhausted the policies' remaining limits, extinguishing its duty to defend.[10]

On July 9, 2015, CNH replied.[11]  CNH disagreed with Travelers' position, arguing the payments did not impact or influence the pending motions.[12]

On August 21, 2015, the Court granted in part and deferred in part the Motion (the "Duty to Defend Decision").  In the Duty to Defend Decision, the Court ruled as follows:

> Accordingly, unless there is another reason why Travelers has been relieved of its duty to defend, the Court holds that Travelers has a duty to provide CNH with a defense as to the Underlying Lawsuits so long as the asbestos-related complaints either refer to a J.I. Case Company product or do not refer to a brand name, and does not only refer to International Harvester, New Holland or another non-J.I. Case Company brand.[13]

The Court then discussed whether Travelers may be excused from its duty to defend because CNH may have failed to provide proper notice or to cooperate in the defense on some of the claims made under the Insurance Policies.

The Court also addressed whether, under applicable Wisconsin law, Travelers may have waived its right to argue timeliness of notice and failure to cooperate through its interaction with CNH.  The Court concluded this part of its decision by stating:

> The Court is not entirely convinced that questions of fact remain on the waiver issue.  From what has been presented to the Court, Travelers seems to have taken, throughout its interaction with CNH, a uniform position that it would not provide

---

[8] *Id.*
[9] *Id.* at *4.
[10] *Id.*
[11] Letter, dated July 6, 2015, from John C. Cordrey, Esq., to the Honorable Eric M. Davis (CNH's response to Travelers July 6, 2015 correspondence).
[12] *Id.* at *2–3.
[13] *CNH Indus. America LLC,* 2015 WL 5016849, at *3.

3

CNH with a defense or indemnification under the Case Insurance Policy. If the Court determines that Travelers consistently maintained that no coverage or a duty to defend existed then Travelers will be hard pressed to demonstrate that CNH's untimely notice, if any, prejudiced Travelers.[14]

Noting that Travelers had "expended most of its briefing and argument on the issues of choice of law and effective assignment," the Court believed that supplemental briefing on the issue of waiver would be helpful.[15] Further, the Court asked for a "full presentation as to why Travelers believes its . . . paying some defense costs and indemnification has an impact on the duty to defend."[16] In a related ruling, the Court held that the only remaining policies at issue were the 1972-73 J.I. Case Policy, the 1/1/78–9/1/78 Tenneco Policy, and the 9/1/85–9/1/86 Tenneco policies.[17]

The Court went on to list additional areas where supplemental briefing may be needed. Finally, the Court provided that it would contact the parties to set up a status conference on briefing and additional oral arguments. The Court did this in an attempt to preserve resources of both the parties and the Court. The Court contacted the parties. The parties wrote the Court and asked that it defer scheduling a status conference so that they could address some outstanding issues in mediation. The Court did defer.

On December 23, 2015, without advanced notice to the Court, CNH filed Plaintiff's Supplemental Brief in Support of Its Motions for Summary Judgment. CNH did this even though the Court specifically requested that the parties first meet with the Court at a status conference to address additional briefing and oral arguments. The Court then made the parties

---

[14] *Id.* at*5 (relying upon *Fireman's Fund Ins. Co. of Wisc. v. Bradley Corp.*, 660 N.W.2d 666, 684 (Wisc. 2003)).
[15] *Id.*
[16] *Id.*
[17] *CNH Indus. America LLC v. American Cas. Co. of Reading, Pennsylvania*, C.A. No. N12C-07-108-EMD CCLD, 2015 WL 5016261, at *3 (Del. Super. Aug. 21, 2015).

4

attend a status conference on January 7, 2016. At that conference, the Court set deadlines for parties to file responses and replies on outstanding matters. The Court also set a trial date.

On February 26, 2016, Travelers filed Defendant The Travelers Indemnity Company's Supplemental Brief In Further Opposition To Plaintiff CNH Industrial America LLC's Motion For Partial Summary Judgment Regarding The Duty To Defend. On March 4, 2016, CNH filed its Plaintiff CNH Industrial America's Supplemental Reply Brief in Support of its Motion for Partial Summary Judgment Regarding the Duty to Defend. The Court heard oral argument on March 15, 2016.

Since December 22, 2015, the docket reflects 191 entries in less than eight months.[18]

## LEGAL STANDARD

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[19] Summary judgment will be granted if, after viewing the record in a light most favorable to a non-moving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[20] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[21] The moving party bears

---

[18] The Court understands that not all docket entries are related to specific motion practices; however, the Court believes that it could have been helpful in focusing the parties on the issues important to the Court. As such, much of what has been done since December 23, 2015 may have been avoided if CNH and Travelers had followed the request of the Court regarding a status conference.

[19] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).

[20] *Id.*

[21] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962). *See also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates … that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

the initial burden of demonstrating that the undisputed facts support his claims or defenses.[22]  If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[23]

## DISCUSSION[24]

### DUTY TO DEFEND - WAIVER

The breadth of the contractual duties to defend and to indemnify is well-settled under Wisconsin law.  In Wisconsin, the insurance company assumes the contractual duties of defense and indemnification for claims described in the insurance policy.[25]  The insurers' duty to defend is broader than the insurer's duty to indemnify.[26]  The duty to defend is predicated on the allegations contained in a complaint which, if proved, would give rise to a recovery by the insured under the terms of the policy.[27]  The insurer's duty to defend depends on the nature of the claim and not the merits of the claim.[28]  Any doubts about the duty to defend are to be resolved in favor of the insured.[29]

When coverage disputes arise, Wisconsin law favors a procedure by which the insurer defends the policyholder subject to a reservation of rights or intervenes in the underlying lawsuit and requests a bifurcated trial on the issue of coverage, moving to stay liability proceedings until the coverage matter is resolved.[30]  If an insurer reserves rights, the insured has the right to

---

[22] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).
[23] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).
[24] The Court will not present a full fact section in this decision.  The Court has already provided factual discussions in previous decisions.  Instead, the Court will only discuss those facts relevant to waiver.
[25] *Elliot v. Donahue*, 485 N.W.2d 403, 408 (Wisc. 1992).
[26] *Id*.
[27] *Sola Basic Indus., Inc. v. U.S. Fid. & Guar. Co.*, 280 N.W.2d 211, 213 (Wisc. 1979).
[28] *Id*. at 214.
[29] *Elliot*, 485 N.W.2d at 408.
[30] *Bradley Corp. v. Zurich Ins. Co.,* 984 F.Supp. 1193, 1998 (E.D. Wis. 1997).

control the defense.[31]  If an insurer uses these procedures, the insurer "runs no risk of breaching its duty to defend."[32]  Although the insurer is not required to follow such procedures, it declines to do so at its own peril.[33]

While an insurer may reject the tender of defense when coverage issues are fairly debatable without breaching its duty to defend if the coverage determination precedes the underlying action, the insurer must provide a defense to the insured in the underlying action if the underlying action comes before a coverage determination.[34]  Further, an insurance company may not reject a tender of defense when coverage is fairly debatable without breaching its duty to the insured.[35]  Breaching its duty to defend may result in the insurer's waiving it right to assert coverage defenses.[36]

Travelers makes three arguments as to why it has no duty to defend.  First, it claims a 1980 Claims Handling Agreement ("Agreement")[37] precludes coverage.  Travelers and CNH's corporate predecessor, Case, entered into the Agreement.  The Agreement allowed Case, at its option, to manage lawsuits filed against it relating to certain specific insurance policies.[38]  The Agreement states, in pertinent part:

---

[31] *Lakeside Foods, Inc. v. Liberty Mut. Fire Ins. Co.,* 789 N.W.2d 754, 2010 WL 2836401, at *8 (Wis. Ct. App. 2010) (Table).

[32] *Bradley Corp.*, 984 F.Supp. at 1198; *see also Newhouse by Skow v. Citizens Sec. Mut. Ins. Co.,* 501 N.W.2d 1, 5–6 (Wis. 1993).

[33] *Elliott*, 485 N.W.2d at 407.

[34] *Id.* at 406.

[35] *U.S. Fire Ins. Co. v. Green Bay Packaging, Inc.,* 66 F.Supp.2d 987, 996 (E.D. Wisc. 1999).

[36] *Id.*

[37] Pl.'s Reply Br. in Supp. of Its Mot. for Partial Summary Judgment Against Travelers Regarding the Duty to Defend (Mar. 7, 2016); Ex. B at 1. ("…TR-NSL-111T894-1-77 and TR-NSL-111T886-1-77, and any renewals or replacements of such policies during the period beginning January 1, 1977" to December 30, 1980).  The Court read the Agreement and notes two interesting facts not relevant to its decision here but may be relevant to pending motions.  The Agreement clearly identifies Case as an insured under certain insurance policies issued by Travelers and that Case is a corporation having its principal office in Racine, Wisconsin.  Moreover, in the Agreement at least, the parties negotiated a choice of law provision and designated that the "Agreement shall be construed in accordance with the Laws of the State of Connecticut."

[38] *Id.* at 1. ("…TR-NSL-111T894-1-77 and TR-NSL-111T886-1-77, and any renewals or replacements of such policies during the period beginning January 1, 1977" to December 30, 1980).

7

Whereas, under the aforesaid policies, . . ., Travelers has agreed to pay certain sums which Tenneco or Case may become legally obligated to pay, Travelers has the right and the duty to defend certain suits . . ..

Whereas, Case desires to handle, investigate, settle, or defend any Claim or Claims, at its option, and therefore desires that Travelers relinquish its rights and duties to defend. . . .

Now, therefore, in consideration of the premises, the mutual promise of the parties and other good and valuable consideration, the parties agree:

1. Travelers will continue to have the rights and duties regarding defense, and the right regarding investigation and settlement, provided by the aforesaid policies. However, ***with respect to any specific Claim or Claims, Travelers will, at the request of Case, allow Case to have the right to investigate, settle and defend such Claim or Claims and Travelers shall have no duty, notwithstanding the provisions of the foregoing policies, renewals or replacements, to investigate, settle or defend such Claims.*[39]**

The Court finds that Travelers' argument as to the Agreement fails for at least two reasons. First, the Agreement is policy (or policies) specific and does not even relate to one of the policies at issue here – the Case Insurance Policy. Second, the Agreement is not a broad hold harmless and indemnity agreement. The Agreement releases Travelers from its defense obligation only if CNH requests to handle its own defense as to a specific "Claim" or "Claims." When pressed, Travelers has failed to identify a single situation where CNH (or Case) requested to handle its own defense.[40] Moreover, the Court has not found any factual support in the record that CNH (or Case) made any requests with respect to a "Claim" covered under the Agreement.

Travelers does argue that CNH impliedly made a request under the Agreement by defending claims that are covered by the policies subject to the Agreement. However, the Agreement does not speak to implied requests or consent. Instead, the Agreement requires Case (here CNH) to make a request – "…at the request of Case…" – and does not speak to "implied

---

[39] *Id*. at 1-2. (emphasis added).
[40] Mtn. Hr'g Tr. 62:21–64:15, Mar. 15, 2016.

consent." Given the other affirmative duties of the parties to the Agreement and the purpose of the Agreement, Travelers' implied request argument is not supportable.

Travelers also contends that its efforts to investigate CNH's successor-in-interest status fulfilled its duty to defend. Travelers claims that Wisconsin law allows an insurer to investigate coverage prior to accepting an insured's tender.[41] Travelers argues that the insurer fulfills its duty to defend once it requests clarification from the insured of its position.[42] If the insured is uncooperative or unresponsive, the insurer need not pursue the matter further.[43] Thus, Travelers argues that its duty to defend was satisfied because: (i) Travelers' reserved its rights and investigated CNH's alleged successor-in-interest status; and (ii) CNH has been uncooperative by refusing to turn over corporate information. Because of this, Travelers contends that its duty to defend was obviated.

Travelers' reliance on *Towne Realty, Inc. v. Zurich Ins. Co.* is misplaced. In *Towne Realty*, the plaintiffs advised its insurance carrier of an underlying suit.[44] The insurer denied coverage seven months later.[45] The insurer's defense was that the insured's request was not explicit.[46] The *Towne Realty* Court held that if a request for defense is ambiguous, the insurer shall send a request for clarification of whether the insured wanted the insurer to provide a defense.[47] That did not occur here. CNH has made it abundantly clear it wanted Travelers to provide a defense. Travelers' letters requesting CNH's corporate status is not tantamount to a request for clarification about providing a defense.

---

[41] *Lakeside Foods, Inc. v. Liberty Mut. Fire Ins. Co.,* 789 N.W.2d 754, 2010 WL 2836401 (Wis. Ct. App. 2010) (Table).
[42] *Towne Realty, Inc. v. Zurich Ins. Co.,* 548 N.W.2d 64, 67 n.2 (Wis. 1996).
[43] *Id.*
[44] *Id.* at 65.
[45] *Id.*
[46] *Id.* at 67.
[47] *Id.*

Importantly, Travelers did not follow the clearly defined practice under Wisconsin law for contesting the need to provide a defense or to indemnify. When there was a question as to the duty to defend or to indemnify, Travelers should have defended CNH, the purported policy holder, subject to a reservation of rights or intervened in the underlying lawsuit and requested a bifurcated trial on the issue of coverage, moving to stay liability proceedings until the coverage matter was resolved. Travelers cannot provide an instance where it followed this procedure.

Instead, Travelers engaged in a practice that shifted the burdens from the insurer to the insured. Travelers consistently issued "full reservation of rights" letters and waited for CNH to provide Travelers information regarding ownership, assignment and consent. Moreover, Travelers told CNH in these letters that CNH should "please take the steps you deem necessary to protect your interests in these matters."[48] This "process" meant that CNH, and not Travelers, took on the duty to defend claims while the issue of coverage was addressed.

The Court notes that, in hindsight, this whole practice of requesting information from CNH seems extremely futile. Travelers took the "legal" position that, under Texas law, the anti-assignment provisions of the relevant policies barred CNH from being an insured party under the policies absent Travelers consent. The Court is unaware of any evidence in the record that shows Travelers ever provided written consent to the assignment of the policies to CNH. Travelers must have known that from the outset (or soon thereafter). So, the requests by Travelers and the attempts, if any, by CNH to collect information were wasted efforts from day one.[49]

---

[48] *See, e.g.,* Letter, dated March 28, 2012, from Sonia Khemka-Choudhary to Jacqueline J. Swiss; Letter, dated January 25, 2011, from Sonia Khemka-Choudhary to Diane L. Scialaba.

[49] The Court does not seem to be the only one that sees it this way. Citing to the deposition of a representative from Marsh USA, Inc., The Special Master's Opinion provides:

> [The Marsh deponent] also expressed his view that his May 2, 2008 notice letter to Travelers contained sufficient information for CNH to seek coverage under the legacy Tenneco and J.I. Case policies. He believed Travelers' focus on corporate history was a 'red herring' because in his opinion Travelers

Last, Travelers argues it has been prejudiced by CNH's failure to comply with the notice and cooperation provisions. Travelers contends it presented uncontested evidence that CNH did not provide notice for more than thirty days after service of the underlying complaint. As such, it was prejudiced because it could not participate in defense or settlement, or investigate claims.[50]

Under Wisconsin law, "'[a]n insured is required to give timely notice to his or her insurer.'"[51] In this case, as the Court has already ruled, the insured (CNH) must give the insurer (Travelers) notice of an occurrence "as soon as practicable;" and, if a claim is made or a suit is brought against the insured (CNH), the insured (CNH) must "immediately" forward to the insurer (Travelers) every demand, notice, summons or other process received by the insured (CNH).[52] Through statute in Wisconsin, notice furnished "as soon as reasonably possible and within one year after the time it was required by the policy" is sufficient.[53] An insured's notice is not deemed untimely if the notice is furnished as soon as reasonably possible within one year

---

should have provided a defense while it was sorting out the corporate history issues. Ultimately, [the Marsh deponent] concluded from reading the 1994 Reorganization Agreement that J.I. Case had the asbestos liabilities at issue.
Special Master's Opinion at 17 (citations to record omitted).

[50] Travelers' position in its briefs seems to be contradicted by its own representatives. For instance, Erik Sandberg, the Civil Rule 30(b)(6) representative of Travelers, testified that he could not identify instances of prejudice. The Court does note that the questions were not always as to specific claims or lawsuits and came in the course of lengthy depositions

[51] *Ansul, Inc. v. Emp'rs Ins. Co. of Wausau,* 826 N.W.2d 110, 117 (Wis. App. Ct. 2012)(quoting from *Neff v. Pierzina*, 629 N.W.2d 177 (Wisc. 2001).

[52] *See CNH Indus. America LLC,* 2015 WL 5016849, at *4. The Court needs to clarify its earlier decision as to when the insurer must provide notice under the Insurance Policies. The Case Insurance Policy contains the Provision. The Provision is broken into three subparts – a, b & c. Subsections a & b are notice provisions and subsection c is the cooperation provision. The earlier decision only addressed subsection a as a notice provision. Subsection a is a notice provision when there is an occurrence. Subsection b is a notice provision when a claim is made or a suit is instituted against the insured. If there were a triable issue on notice, the Court would need to readdress this issue for purpose of presenting the matter to the fact finder; however, the Court is now finding that Travelers waived its right to notice. Therefore, there is no need to factually determine whether the notice given was "as soon as practicable" or "immediately forwarded." In no event, though, does the Provision contain a 30-day notice requirement as Travelers argues.

[53] Wis. Stat. § 631.81.

11

of the time notice is required by the policy's terms.[54] The insurer bears the burden to prove prejudice if notice is timely.[55]

Prejudice is presumed under Wisconsin law if notice of a suit is given more than one year after the time required in the insurance policy.[56] The burden of proof then shifts to the insured to prove the insurer was not prejudiced by the untimely notice.[57] However, if an insurer consistently maintains no coverage existed, and the timing of a notice would not have changed the insurer's decision to deny its duty to defend, then the insurer is not prejudiced.[58]

Travelers has consistently denied coverage. Travelers' corporate designee testified, "Until we've been able to make a determination whether or not CNH is an insured, we cannot treat them as such."[59] The designee further confirmed that Travelers could not defend CNH's cases until determining their insured status.[60] The designee testified, "Travelers was unable to agree with CNH that it, CNH, was an insured under these policies. We don't tend to defend entities that are not insureds."[61] Even if notice had been timely, the designee testified that Travelers "[stood] by the coverage defenses that it has raised," including anti-assignment.[62] So, even if CNH had complied with notice provisions, Travelers would have denied coverage. Travelers cannot stand behind this denial and now claim prejudice.

In *Fireman's Fund Insurance Co. of Wisconsin v. Bradley Corp.,* the Wisconsin Supreme Court found an insurer did not suffer prejudice from a fifteen month delay in notice because the

---

[54] *Gerrard Realty Corp. v. American States Ins. Co.,* 277 N.W.2d 863, 872 (Wis. 1979) (interpreting WIS. STAT. § 631.81).
[55] *Id.*
[56] *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.,* 660 N.W.2d 666, 683 (Wis. 2003).
[57] *Id.*
[58] *Id.* at 684.
[59] Erik Sandberg Dep. Tr. 270:25–271:10, May 12, 2015.
[60] *Id.* 271:11–14.
[61] *Id.* 291:12–21.
[62] Erik Sandberg Dep. Tr. 837:10–840:10, Jun. 10, 2015.

insurer would have denied coverage, even if notice were timely.[63] The insurer's litigation manager testified that he would have denied a duty to defend even if notice was timely.[64] The *Bradley Corp.* Court found that, as a matter of law, plaintiff met its burden of proof of proving no prejudice.[65]

The facts demonstrate that Travelers never defended CNH in these underlying asbestos cases. This is true even where notice was timely. Travelers' actions left CNH to resolve underlying lawsuits on its own – fully reserving its rights while telling CNH to "please take the steps you deem necessary to protect your interests in these matters." As such, Travelers cannot now claim it was prejudiced by CNH's resolving the lawsuits without Travelers' assistance. Wisconsin law is clear on an insurer's obligations when given notice of an underlying claim. Travelers should have intervened in the underlying lawsuits while maintaining its reservation of rights. Or, it should have moved to stay the underlying lawsuits so coverage could be determined. Travelers did neither. It cannot benefit from its continued delays.

### DUTY TO DEFEND - REIMBURSEMENT

Travelers contends its July 6, 2015 payments retroactively discharged its obligations as of May 2009. Travelers argues May 2009 is the exhaustion date because that is the latest date for which Travelers reimbursed CNH for its underlying settlements. Travelers claims its reimbursement complies with its policies' terms.

The policies all contain identical language regarding its duty to defend. The language states:

> [Travelers] will pay on behalf of the insured all sums which the insured shall
> become legally obligated to pay as damages because of bodily injury or property
> damage to which this policy applies caused by an occurrence or personal injury,

---

[63] *Bradley Corp.,* 660 N.W.2d at 684.
[64] *Id.* at 683–84.
[65] *Id.* at 684.

and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury or damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation or and settlement of any claim or suit as it deems expedient, but [Travelers] shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.[66]

Travelers contends that CNH's payments exhausted liability in 2009.

Travelers cites the Court to cases that provide that the party which makes payment under the insurance policy is irrelevant for exhaustion purposes. That is, CNH's payments terminated Travelers' duty to defend.

In *Teigen v. Jelco of Wisconsin, Inc.*,[67] plaintiffs agreed to take less than the full policy value to settle their case against their primary insurer.[68] This agreement is called a *Loy* release.[69] Per the *Loy* release's terms, plaintiffs had to give their excess carriers credit for the full primary policy exhaustion, not the settlement amount.[70] The factual record here does not provide that CNH entered into a *Loy* agreement with any party.

Travelers' other cited cases involve the question of when excess coverage is triggered.[71] None involved a question of a primary policy's exhaustion. Travelers is CNH's primary insurer. Travelers' rights and duties differ from CNH's excess carriers.

Under Wisconsin law, an insurer's obligations are fully discharged after it pays the maximum amount under the policy.[72] Any alteration in an insured's duty to defend must be

---

[66] Exhibit 95 to Affidavit of Diane Scialabba in Supp. of Op. Br. in Support of Pl.'s Mot. for Partial Summary Judgment on Exhaustion (Tr. ID 56154569).
[67] 367 N.W.2d 806 (Wis. 1985).
[68] *Id.* at 808.
[69] *See Loy v. Bunderson,* 320 N.W.2d 175 (Wis. 1982).
[70] *Teigen*, 367 N.W.2d at 808.
[71] *Ali v. Fed. Ins. Co.,* 719 F.3d 83, 92 (2nd Cir. 2013); *Trinity Homes LLC v. Ohio Cas. Ins. Co.,* 629 F.3d 653, 658 (7th Cir. 2010); *Mills Ltd. P'ship v. Liberty Mut. Ins. Co.,* 2010 WL 8250837 (Del. Super. Nov. 5, 2010); *Plantation Pipe Line Co. v. Highlands Ins. Co.,* 444 S.W.3d 307, 313 (Tex. App. 2014).
[72] *St. John's Home of Milwaukee v. Continental Cas. Co.,* 434 N.W.2d 112, 120–121 (Wis. Ct. App. 1988).

explicitly stated in the policy.[73]  There is no alteration in Travelers' policies.  Travelers agreed to pay all sums on CNH's behalf which CNH becomes obligated to pay.  CNH settled claims because Travelers refused to defend it.

Travelers' duty to defend terminates only after Travelers (not CNH) exhausts its applicable limits of liability.  Travelers cannot unilaterally declare its duty to defend terminated retroactively due to a settlement paid for by CNH.  Instead, Travelers' duty to defend would only terminate on the date Travelers made its payment to CNH – i.e., reimbursed CNH for the payments CNH made to satisfy a claim.

### CONCLUSION

For the foregoing reasons, Travelers waived its right to enforce notice and cooperation provisions.  Further, Travelers' indemnity payments extinguished its duty to defend no earlier than July 6, 2015, the date it reimbursed CNH for past settlements.

**IT IS SO ORDERED.**

/s/ *Eric M. Davis*
Eric M. Davis, Judge

---

[73] *Burgraff v. Menard, Inc.,* 875 N.W.2d 596, 607 (Wis. 2016).

15